The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on November 21, 2014, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: November 21, 2014**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 Proceedings |
| | ) | |
| LUANN MITCHELL, | ) | Case No. 13-14494 |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| WESTERN RESERVE AREA | ) | |
| AGENCY ON AGING, | ) | Judge Arthur I. Harris |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| | ) | No. 13-1222 |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| LUANN MITCHELL, | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF OPINION[1]

Plaintiff Western Reserve Area Agency on Aging seeks a determination that

two state court judgments awarding attorney's fees against defendant-debtor

LuAnn Mitchell are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). For the

_____

[1]  This Opinion is not intended for official publication.

reasons that follow, the Court finds that the judgment issued by the Probate Court on November 22, 2006, is nondischargeable, while the judgment issued by the Ohio Eighth District Court of Appeals on February 3, 2010, is dischargeable.

## I.    JURISDICTION

The Court has jurisdiction over this matter.  Proceedings to determine the dischargeability of particular debts are core proceedings under 28 U.S.C. § 157(b)(2)(I).  Core proceedings fall within the jurisdiction granted to this Court pursuant to Local General Order No. 2012-7, dated April 4, 2012.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This dischargeability determination involves two state court judgments against defendant LuAnn Mitchell for attorney's fees and costs incurred as a result of guardianship litigation before Ohio probate and appellate courts spanning 15 years.

In early 1999, LuAnn Mitchell  ("Mitchell") was appointed the guardian of the person and estate of Bertha Washington ("Washington"), a 90-year old Cleveland resident. Mitchell, as guardian, arranged for the provision of Washington's in-home medical nursing care.  By the end of 1999, Washington was involved in a legal dispute with the defendant, Western Reserve Area Agency on Aging ("Western Reserve"), over the terms of her medical nursing care.  Mitchell

2

ultimately secured a state hearing decision in favor of Washington that required Western Reserve to reimburse Washington for care received during a seven week period in early 2000. Western Reserve acknowledged this obligation, and on July 3, 2000, asked Mitchell to submit a list of expenses covered by the hearing decision. Instead of submitting Washington's expenses to Western Reserve, Mitchell filed an Ex Parte Motion to Enforce Judgment in the Cuyahoga County Probate Court (the "Probate Court") seeking enforcement of the state hearing decision on April 13, 2001. The parties conducted limited discovery, during which Mitchell failed to provide documentation of the expenses as requested by Western Reserve. Western Reserve filed a motion to dismiss, and the Probate Court dismissed Mitchell's action for lack of jurisdiction on January 4, 2002.

Mitchell then filed a Complaint for Declaratory Judgment in the Probate Court on February 15, 2002, seeking enforcement of the state hearing decision. Mitchell again failed to comply with Western Reserve's discovery attempts regarding Washington's expenses, and in June 2002, Mitchell voluntarily dismissed her complaint after an abortive attempt to simultaneously enforce the state hearing decision through the Cuyahoga County Court of Common Pleas Special Docket.

On July 16, 2002, Western Reserve filed with the Probate Court a Post

3

Judgment Motion for Attorney Fees and Sanctions Pursuant to Ohio Revised Code Section 2323.51 and Ohio Civil Rule 11 (the "First Sanctions Motion") claiming that Mitchell had no legal basis to file her Complaint for Declaratory Judgment. Western Reserve further asserted that Mitchell had frustrated their discovery requests by failing to turn over evidence of Washington's health care expenses, failing to appear at depositions and probate court hearings, and impeding the hearings she did attend by providing contradictory testimony and displaying an extreme lack of recollection as to basic facts in the case. Magistrate's Decision, Probate Proceeding No. 2002 ADV 59296, at *11 – 13 (the "Magistrate's Decision"). While the First Sanctions Motion was pending, Mitchell petitioned the Ohio Eighth District Court of Appeals ("the Appeals Court") for a Writ of Mandamus compelling the Probate Court to enforce Washington's state hearing decision. The Court of Appeals dismissed the petition. The probate magistrate later issued an order denying Western Reserve's First Sanctions Motion on October 27, 2003.

Western Reserve appealed the magistrate's order, and in an opinion dated August 19, 2004, the Appeals Court reversed the magistrate's decision, finding that the probate court record was "replete with evidence that Western Reserve's motion for sanctions had merit," and remanded the matter to the probate

4

magistrate. *Mitchell v. Western Reserve Area Agency on Aging*,

2004 WL 1853156, 2004-Ohio-4353 (Ohio App. 8th Dist.). On remand, the

probate magistrate concluded that Mitchell's conduct was frivolous and imposed

sanctions against Mitchell totaling $25,804.79 in attorney's fees and expenses.

Magistrate's Decision, at *14–15. Although Western Reserve moved for sanctions

under Ohio Revised Code section 2323.51 and Ohio Civil Rule 11, the

Magistrate's Decision only addressed sanctions under the Ohio Revised Code

section 2323.51. Magistrate's Decision, at *10 – 13. In the Magistrate's

Decision, the magistrate described Mitchell's behavior throughout the probate

proceedings as "relentless harassment" and "that of the proverbial bull in a china

shop: reckless, willful, deliberate, and unhalting." *Id*. at *11. The magistrate

pointed to testimony regarding Mitchell's legal billing entries, in which Mitchell

claimed that she had no recollection as to whom the initials "LM" referred.

*Id*. at *7 – 8. The magistrate considered this, and other lapses in recollection by

Mitchell, to be, "utterly ridiculous[,] incredible . . . [and] contemptible." *Id*. at *7.

The magistrate also highlighted other deliberate attempts by Mitchell to advance

arguments unsupported by fact or law, avoid discovery, or evade court inquiries

while under oath. *See id*. at *10 – 13 ("Attorney Mitchell articulated no legal

basis upon which she filed [her Ex Parte Motion]"; "Rather than mitigate the

5

sanctions process[,] Attorney Mitchell amplified it"; "Attorney Mitchell provided no evidence or legal argument that her Complaint for Declaratory Judgment was supported by any . . . existing law."). Western Reserve objected to the Magistrate's Decision, challenging only the amount of attorney's fees awarded.

On June 13, 2005, the Probate Court entered an order adopting the magistrate's report in part, but increasing the sanction award to $40,994.79. Mitchell appealed the decision. On May 18, 2006, the Appeals Court reversed the Probate Court in part and remanded the matter back to the Probate Court solely for recalculation of the sanction award. *Mitchell v. Western Reserve Area Agency on Aging*, 2006 WL 1360800, 2006-Ohio-2475 (Ohio App. 8th Dist.). On remand, the Probate Court scheduled a hearing for November 9, 2006, on the proper amount of sanctions to be assessed. Mitchell failed to appear at the hearing. Having determined that Mitchell received timely notice of the hearing, the Probate Court held the hearing in Mitchell's absence and received evidence from Western Reserve in support of its First Motion for Sanctions. On November 22, 2006, the Probate Court assessed sanctions of $32,154.79 in attorney's fees and expenses against Mitchell (the "First Sanctions Judgment"). Mitchell appealed the decision, but her appeal was dismissed on February 16, 2007, for failure to transmit the Probate Court record to the Appeals Court.

6

On November 26, 2007, Mitchell filed a Motion for Relief from the First Judgment for Sanctions in the Probate Court. Mitchell alleged that she had not received notice of the November 9, 2006, Probate Court hearing. At a hearing on April 23, 2008, Mitchell testified that she had been in Florida at the time of the hearing, which prevented her from receiving timely notice of the hearing. The Probate Court denied Mitchell's motion for relief, and on June 2, 2008, Mitchell appealed. The Appeals Court affirmed the Probate Court's denial of Mitchell's motion in an opinion dated December 17, 2009, concluding that Mitchell's motion was untimely and failed to state an appropriate basis for relief from judgment. *Mitchell v. Western Reserve Area Agency on Aging*, 2009 WL 4856864, 2009-Ohio-6632 (Ohio App. 8th Dist.).

On September 23, 2009, Western Reserve filed a Motion for Sanctions Pursuant to Ohio Appellate Rule 23 ("Second Sanctions Motion"), asserting that Mitchell's appeal had no legal basis and that Mitchell had unnecessarily delayed appellate proceedings. Western Reserve pointed to two specific instances of delay: (1) Mitchell's repeated requests to extend the deadline to file a reply brief, after which Mitchell failed to file a reply brief, and (2) Mitchell's multiple requests to reschedule oral argument, after which Mitchell moved to waive oral argument less than a day before argument was finally set to be held. Second

7

Sanctions Motion, at *4 – 5. The Appeals Court held a hearing on Western

Reserve's Second Sanctions Motion.  In an order issued February 3, 2010, the

Court granted the Second Sanctions Motion and awarded Western Reserve $6,475

in attorney's fees (the "Second Sanctions Judgment").  Mitchell did not appeal the

award.

On June 24, 2013, Mitchell filed a petition for relief under Chapter 7 of the

Bankruptcy Code.  Mitchell listed the two sanctions judgments, totaling

$38,629.79, as disputed, unsecured, nonpriority debts on the Schedule F form filed

concurrently with her petition.  On September 30, 2013, Western Reserve filed a

Complaint to Determine the Dischargeability of Mitchell's sanctions judgments.

On October 2, 2013, the Court entered an Order of Discharge in Mitchell's

bankruptcy case.

On August 29, 2014, Western Reserve and Mitchell filed Joint Stipulations

"stipulat[ing] to the authenticity and admissibility of all public records and court

filings relating to the issues [in this adversary proceeding]," agreeing to waive the

evidentiary hearing originally scheduled to resolve the matter.  Adv. Pro.

No. 13-1222, Docket No. 33.  The parties completed their briefing on

November 18, 2014.

## III. DISCUSSION

Western Reserve seeks a determination that the First Sanctions Judgment and Second Sanctions Judgment against Mitchell are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

Western Reserve asserts that the Probate and Appeals Courts' findings in the First and Second Sanctions Judgments should be given issue-preclusive effect as to whether Mitchell's conduct was willful and malicious under 11 U.S.C. § 523(a)(6).

The doctrine of issue preclusion applies to dischargeability determinations under section 523. *See Grogan v. Garner*, 498 U.S. 279, 284 n.11, 111 S. Ct. 654, 658 (1991) (citing Restatement (Second) of Judgments § 27 (1982)). As the Sixth Circuit has stated, "the full faith and credit statute, 28 U.S.C. § 1738, requires a federal court to accord a state court judgment the same preclusive effect that the judgment would have in a state court." *See Corzin v. Fordu* (*In re Fordu*), 201 F.3d 693, 704 (6th Cir. 1999). State law controls whether a state court judgment is entitled to issue-preclusive effect. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 1331 – 32. Under Ohio law, the party seeking to invoke issue preclusion has the burden of proof to show that each element of the doctrine is satisfied. *See Murray v. Wilcox*

9

(*In re Wilcox*), 229 B.R. 411, 415 – 16 (Bankr. N.D. Ohio 1998).

> Under Ohio law, issue preclusion applies
>
> when the fact or issue, (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action.

*State ex rel. Davis v. Pub. Emps. Ret. Bd.*, 120 Ohio St. 3d 386, 392,

889 N.E.2d 975, 982 (2008) (quoting *Thompson v. Wing*, 70 Ohio St.3d 176, 183,

637 N.E.2d 917 (1994) (internal quotation marks omitted)); *In re Rebarchek,*

293 B.R. 400, 405 (Bankr. N.D Ohio 2002) (Speer, J.).  "The essential test in

determining whether [issue preclusion] is to be applied is whether the party

against whom the prior judgment is being asserted had full representation and a

'full and fair opportunity to litigate that issue in the first action.' " *Cashelmara*

*Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813, 623 N.E.2d 213

(1993), (quoting *Hicks v. De La Cruz*, 52 Ohio St.2d 71, 74, 369 N.E.2d 776

(1977)).

Western Reserve asserts that the findings from both the First Sanctions

Judgment from the Probate Court and the Second Sanctions Judgment from the

Ohio Eighth District Court of Appeals are entitled to issue-preclusive effect, and

that both judgments are nondischargeable under section 523(a)(6).  The Court will

10

address the applicability of the issue preclusion doctrine and the

nondischargeability of each judgment in turn.

A.  *The First Sanctions Judgment*

    1.  *Does issue preclusion apply to the Probate Court rulings?*

Western Reserve asserts that the findings contained in the Magistrate's

Decision and Probate Court rulings preclude Mitchell from arguing that her

conduct does not give rise to a nondischargeability determination under

section 523(a)(6).

In order to demonstrate that issue preclusion applies, Western Reserve must

satisfy the Ohio Supreme Court's three-part test set forth above.  With respect to

the first part, the record establishes that the parties actually and directly litigated

the elements required for an award of sanctions under state law.  Although

Mitchell contends that the sanctions judgment cannot be afforded issue-preclusive

effect because it was awarded by default, the record shows that the Probate Court

never entered a default against Mitchell.  In addition, the Probate Court and

Appeals Court records are replete with instances where Western Reserve and

Mitchell directly litigated the appropriateness and proper amount of sanctions

against Mitchell.  Mitchell challenged Western Reserve's motion for sanctions at a

four-and-a-half day hearing in 2005, and contested the sanctions on multiple other

11

instances in the Probate Court and on appeal. The November 22, 2006, hearing on sanctions was held in Mitchell's absence, but Mitchell received appropriate notice of the hearing and declined to participate. Through multiple rounds of briefing and hearings, Mitchell had several full and fair opportunities to oppose Western Reserve's motion for sanctions. The first element of issue preclusion is therefore satisfied.

The second and third elements of issue preclusion are easily met. The Cuyahoga County Probate Court is a court of competent jurisdiction on probate matters in Cuyahoga County, and it has authority under the Ohio Revised Code to award sanctions where appropriate. *See* Ohio Rev. Code Ann. § 2323.51. It is undisputed that the Probate Court issued a sanctions judgment based on Mitchell's conduct before that court. Mitchell was the sole defendant in the Probate Court proceedings, and therefore satisfies the third element of privity.

However, the Court's finding that the elements of issue preclusion have been satisfied is not the end of the Court's inquiry. The Court now must determine whether a sanctions award under Ohio Revised Code section 2323.51 encompasses the elements for willful and malicious injury required under section 523(a)(6) of the Bankruptcy Code, and if so, whether the Probate Court's findings satisfy those same elements. *See In re Keaty*, 397 F.3d 264, 274 (5th Cir. 2005)

12

(analyzing the issue-preclusive effect of an analogous Louisiana sanctions judgment on a section 523(a)(6) nondischargeability determination).

> *2. Does a sanctions award under Ohio law encompass the elements of a section 523(a)(6) nondischargeability determination?*

Deciding whether Ohio's sanctions standard encompasses the elements of a section 523(a)(6) nondischargeability determination necessarily requires comparing the issue presented in the Probate Court with the issue before this Court in the present adversary proceeding. *See Cashelmara Villas Ltd. Partnership*, 623 N.E.2d at 814. The court from which the allegedly preclusive judgment was issued need not have applied the exact same legal standard to be used by the later court addressing issue preclusion in order for the doctrine to apply. *See Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1101 (6th Cir. 2012). However, the standards applied must be sufficiently similar such that the issue upon which the latter judgment is based is effectively the same as the earlier judgment. *Id*.

Western Reserve moved the Probate Court for sanctions pursuant to Ohio Civil Rule 11 and section 2323.51 of the Ohio Revised Code. Ohio Rev. Code Ann. § 2323.51(A)–(B). Upon timely motion following entry of final judgment in a civil action, any party harmed by "frivolous conduct" may move for a sanction

13

award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the actions. *Id*. at (B)(1). For purposes of section 2323.51 sanctions awards, frivolous conduct is defined as conduct of a party that either "obviously serves merely to harass or maliciously injure another party . . . or is for another improper purpose, including . . . causing unnecessary delay or a needless increase in the cost of litigation," or "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." Ohio Rev. Code Ann. § 2323.51(A)(2)(a)(i–ii).

In this proceeding, Western Reserve seeks a determination of nondischargeability under § 523(a)(6). Section 523 of the Bankruptcy Code provides that a discharge under section 727 of the Bankruptcy Code does not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). The scope of cognizable injuries under section 523(a)(6) is "broad, and refers to an economic injury . . . just the same as a physical assault on an individual[.]" *In re Leist*, 398 B.R. 595, 605 (Bankr. S.D. Ohio 2008).

A finding of willfulness requires a "deliberate or intentional *injury*, not

14

merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S.Ct. 974, 977 (1998) [emphasis in original]. An injury is malicious "if it is '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *In re Little*, 335 B.R. 376, 384 (N.D. Ohio 2005) (Baxter, J.), (citing *In re Sicroff*, 401 F.3d 1101, 1106 (9th Cir. 2005) [internal citations omitted]). Conduct that is merely negligent or reckless is insufficient to except the resulting debt from discharge. *Kawaauhau,* 523 U.S. at 62. A creditor seeking a nondischargeability determination must prove that the debt is nondischargeable by a preponderance of the evidence, *Grogan*, 498 U.S. at 291, and courts may consider circumstantial evidence of the debtor's state of mind to determine whether the conduct was willful and malicious. *See In re Sintobin,* 253 B.R. 826, 831 (N.D. Ohio 2000).

Though the Ohio Revised Code and Bankruptcy Code standards at issue are enumerated differently, their substance is essentially the same. Each standard requires a showing that the conduct was intended to inflict injury, committed in bad faith or without just cause, and was of a type that necessarily results in injury to another. To the extent that Ohio Revised Code section 2323.51(A)(2)(a)(ii) defines frivolous litigation without expressly referring to an intent to injure, the considerations under that subsection are relevant to the element of malice under

15

Bankruptcy Code section 523(a)(6), particularly whether the conduct was

wrongful, necessarily resulted in injury, and was without just cause or excuse.

The similarities between the applicable sanctions standards and a section 523(a)(6)

dischargeability determination substantially outweigh the differences.

*See In re Keaty*, 397 F.3d at 274 (judgment under analogous Louisiana sanctions

statutes established elements of nondischargeability under section 523(a)(6);

*see also In re Kates*, 485 B.R. 86 (Bankr. E.D. Pa. 2012) (judgment under

analogous Delaware discovery sanctions statutes established elements of

nondischargeability under section 523(a)(6).

The Court now turns to examine whether the state court findings entitled to

preclusive effect support a determination of nondischargeability under

section 523(a)(6).

### 3. Do the Probate Court's findings establish the elements for nondischargeability under section 523(a)(6)?

The findings in the Magistrate's Decision support a determination that

Mitchell's conduct was willful and malicious within the meaning of

section 523(a)(6).

The magistrate's findings demonstrate that Mitchell's conduct was willful.

The magistrate noted that in order to award attorney's fees and costs against

16

Mitchell under Ohio law, Western Reserve had to show that Mitchell "intended to harass or injure" Western Reserve. Magistrate's Decision at 11. Mitchell, for a time, complied with the applicable administrative procedures needed to secure medical expense reimbursement for Washington, demonstrating that she was aware of the proper procedure to follow. *Id.* at 10. Furthermore, Mitchell was directed by Western Reserve and a representative of the Ohio Department of Job and Family Services to submit evidence of her ward's expenses, including Mitchell's own legal expenses, to Western Reserve in accordance with Ohio administrative law. *Id*. at 11. Mitchell ignored these instructions and instead attempted to enforce the state hearing determination by filing an action in the Probate Court without success. *Id*. Mitchell then sought enforcement of the judgment by filing a Complaint for Declaratory Judgment with the Probate Court, which she promptly voluntarily dismissed. *Id.* Throughout these proceedings, Mitchell refused to provide Western Reserve with evidence of Washington's expenses and repeatedly ignored well-established administrative procedures. The magistrate concluded that Mitchell "[sought] to injure [Western Reserve] by requiring payment for unprovable expenses." Mitchell knew the appropriate procedures to follow, but deliberately declined to follow them as a means of wasting the time and resources of Western Reserve. Her conduct demonstrates an

17

intent to injure, therefore satisfying the "willful" requirement of section 523(a)(6).

Mitchell's conduct was also "malicious" as defined under section 523(a)(6). The Magistrate's Decision states that Mitchell's refusal to follow administrative procedures and cooperate with the Probate Court's directives was wrongful and contravened established Ohio law. *Id*. at 11 – 13. The magistrate also concluded that Mitchell's conduct was intentional. The magistrate colorfully characterized Mitchell's actions as "[those] of the proverbial bull in a china shop[:] reckless, willful, deliberate, and unhalting." *Id*. at 11. Notwithstanding the usage of the term "reckless," the magistrate found that Mitchell intended to injure Western Reserve.

Mitchell's actions also necessarily resulted in injury. Abusive litigation tactics that unnecessarily delay litigation or increase costs necessarily injure the party subjected to such tactics. *See In re Keaty*, 397 F.3d at 274 (finding that delaying proceedings and increasing court costs injure other litigants). Here, Mitchell's frivolous filings in state court forced Western Reserve to expend time and resources defending actions that served no other purpose than delaying a final resolution of Bertha Washington's case. Those unnecessary expenses formed the basis for the First Sanctions Judgment against Mitchell.

The Magistrate's Decision also stated that Mitchell lacked just cause or

18

excuse for her conduct.  Beyond her failure to comply with clearly established administrative procedures, the magistrate determined that Mitchell's declaratory judgment action was "without any legal merit," and noted that Mitchell refused to offer any credible explanation for her filings at a hearing before the magistrate. The magistrate also concluded that Mitchell's petition for a writ of mandamus and attempt to commence an action through the Cuyahoga County Court of Common Pleas Special Docket served only to compound "her relentless harassment of [Western Reserve]." *Id*. at 12.  Despite being given multiple opportunities to explain herself to the magistrate judge or Probate Court judge, Mitchell never offered a "plausible explanation or special circumstances" for her behavior. *Id*. at 13.

The Probate Court rulings are afforded issue-preclusive effect, and the findings contained therein demonstrate that Mitchell's conduct was willful and malicious within the meaning of section 523(a)(6).  Accordingly, the Court finds that the First Sanctions Judgment of $32,154.79 against Mitchell is nondischargeable under 11 U.S.C. § 523(a)(6).

B.  *The Second Sanctions Judgment*

    *1.  Does issue preclusion apply to the Appeals Court judgment?*

Western Reserve contends that its Second Sanctions Judgment against Mitchell from the Ohio Eighth District Court of Appeals is also entitled to issue-preclusive effect as to nondischargeability.  The Court incorporates by reference its earlier discussion of Ohio law governing issue preclusion and federal law governing nondischargeability under section 523(a)(6).

On September 23, 2009, Western Reserve filed a motion for sanctions against Mitchell under Ohio Rule of Appellate Procedure 23.  In the motion, Western Reserve alleged that Mitchell's appeal of the denial of her unsuccessful motion for relief from judgment was frivolous.  Western Reserve noted that Mitchell's motion for relief was filed 369 days after the Probate Court entered judgment against Mitchell, a period longer than the one year limit prescribed by Ohio Civil Rule 60(b) and substantially longer than the time frame deemed acceptable by an abundance of Ohio courts interpreting Rule 60(b).  *See* Western Reserve's App. R. 23 Mot. For Sanctions, at *2.  Western Reserve also cited several instances in which Mitchell allegedly asked for and received extensions to file a reply brief and schedule oral argument, only to fail to file the brief and waive oral argument less than 24 hours before the rescheduled argument date.

20

*Id.* at *4 – 5.  The Appeals Court held a hearing on Western Reserve's motion on November 9, 2009, and following a denial of sanctions and subsequent reconsideration, the Appeals Court awarded Western Reserve attorney's fees of $6,475.  The Appeals Court's order granting the motion stated:

> Motion by Appellee for Sanctions is granted. Dale Nowak, counsel for Appellee, testified under oath at the November 9, 2009 Sanctions Hearing as to the reasonableness of and necessity for the attorneys' fees incurred by appellee in defending this appeal.  Based on his testimony, Appellee is awarded attorney fees in the amount of $6,475 against Appellant Luann Mitchell.

Feb. 3, 2010, Journal Entry, Appeals Case No. 91546.  Western Reserve did not file a copy of the transcript from the November 9, 2009, sanctions hearing with this Court, and neither the Appeals Court's ruling, nor Western Reserve's motions for sanctions, included a request for sanctions under Ohio Revised Code section 2323.51.

Though the Appeals Court concluded in the Second Sanctions Judgment that Mitchell's appeal was frivolous and awarded attorney's fees under Appellate Rule 23, the Second Sanctions Judgment cannot be given issue-preclusive effect as to nondischargeability under section 523(a)(6).  Under Appellate Rule 23, "[i]f a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and

21

costs." Ohio R. App. P. 23. Courts interpreting Appellate Rule 23 have held that an appeal is frivolous if it "presents no reasonable questions for review." *See Siemientkowski v. State Auto. Mut. Ins. Co.*, 2006 WL 2299358, 2006-Ohio-4122, at *2 (Ohio 8th App. Dist. Aug. 10, 2006) (quoting *Talbott v. Fountas*, 16 Ohio App. 3d 226, 226 (Ohio 10th App. Dist. 1984) (internal quotation marks omitted)). Unlike the more expansive inquiry required under section 2323.51, a request for Appellate Rule 23 sanctions simply requires the court to determine whether the appellant has presented "reasonable questions for review." *Siemientkowski*, 2006 WL 2299358, at *2. The Second Sanctions Judgment provides no evidence that the Appeals Court considered and passed judgment on issues approximating a section 523(a)(6) nondischargeability determination. The parties stipulated to submission of this matter for resolution based only on the briefs and filings presented to the Court, and neither party filed a transcript from the Appeals Court sanctions hearing for the Court's consideration. Adv. Pro. No. 13-1222, Docket No. 33. Based upon the evidence before the court, Western Reserve has not carried its burden of showing that each element of the issue preclusion doctrine is satisfied with respect to the Second Sanctions Judgment. Therefore, the Court declines to accord the Second Sanctions Judgment issue-preclusive effect as to nondischargeability.

22

*2. Is the Second Sanctions Judgment nondischargeable under section 523(a)(6)?*

The Court must also consider whether the evidence submitted in this adversary proceeding independently supports a finding that the Second Sanctions Judgment is nondischargeable under section 523(a)(6). *See In re Powers*, 421 B.R. 326 (Bankr. W.D. Tex. 2009); *In re McDowell*, 415 B.R. 601, 611 (Bankr. S.D. Fla. 2008). While the state court determinations regarding Mitchell's conduct before the Probate Court include copious factual findings and conclusions, the Appeals Court's sanctions award judgment is comparatively sparse as to Mitchell's appellate conduct. The Second Sanctions Judgment simply states that the motion for sanctions was granted without further discussion. Feb. 3, 2010, Journal Entry, Appeals Case No. 91546. While such issues may have been addressed at the Appeals Court's November 9, 2009, sanctions hearing, neither party filed a copy of the hearing transcript for the Court's review.

Nor does the Appeals Court's earlier opinion offer significantly more detail as to the nature of Mitchell's conduct. Dec. 17, 2009, Journal Entry and Op., Appeals Case No. 91546. In that opinion, the Appeals Court noted on several occasions that Mitchell's grounds for relief were insufficient, and it rejected all of Mitchell's asserted defenses upon which relief from judgment might possibly be

23

granted. *Id*. at *7 – 9. The Appeals Court did not address's Mitchell's state of mind during the process or expound upon her conduct before the Appeals Court. Instead, the opinion succinctly concludes with a finding that "there were no reasonable grounds for [Mitchell's] appeal." Absent more detailed findings or a more fully developed record, the Court cannot say that Mitchell's conduct before the state appellate court was willful and malicious. Accordingly, the Court finds that the Second Sanctions Judgment is dischargeable.

## IV.    CONCLUSION

For these reasons, the Court finds that the judgment issued by the Probate Court on November 22, 2006, is nondischargeable under 11 U.S.C. § 523(a)(6), while the judgment issued by the Ohio Eighth District Court of Appeals on February 3, 2010, is dischargeable.

IT IS SO ORDERED.